THE prisoner was indicted for the murder of George A. Davidson.
The case was opened on the part of the State by Robert Rogers, Esq., who aided the Attorney General in the prosecution, stating the facts which the State would be able to prove. He stated generally that a warrant had been issued for the arrest of the prisoner, on a charge of larceny of a watch, and placed in the hands of a constable of the county, residing at Delaware City, who deputed George A. Davidson to execute it. Davidson arrested the prisoner, searched him for weapons, bound him insecurely and proceeded with him in a carriage towards New Castle. On the road the prisoner got his arms loose, so that he might use a dirk knife which he had concealed about his person, and stabbed the officer first in the shoulder, afterwards in the left arm, the knife passing quite through the *Page 497 
arm, severing the principal artery, and having the blade broken off and left sticking in the arm. The prisoner then fled, and Davidson ran after him, until he fell from the loss of blood. He soon after died.
The homicide was committed without witnesses to the fact. There was some evidence tending to show a previous struggle in an attempt to escape; that the deceased had prisoner by the throat; but whether the conflict began with a blow from the prisoner, or an attempt to escape, and resistance, and a stabbing during the contest, was not made clear. The authority of Davidson to hold the prisoner became therefore a question of importance.
It appeared in evidence that a warrant was issued for the arrest of the prisoner on a charge of larceny; and was delivered to Constable Jackson, who, not being able to execute it, handed it to Constable Wise. Wise gave it to Davidson, who was not a constable, and deputed him to execute it.
This deputation was offered and objected to, and excluded by the Court.
The power of a deputy can never be greater, or other, than that of the principal. This writ was not issued or delivered to James M. Wise; he had no power under it to arrest the defendant, and he could impart no such power to Davidson.
Wise could not have been held responsible for neglect of duty in failing to execute this writ; indeed he had strictly no power to execute it.
The forms of pleading are evidence of the law, and no action could be maintained against a constable in respect to process without averring and proving that the process was duly delivered to such constable to be executed.
The evidence of deputation by Wise to Davidson was therefore ruled out.
The following points were made for the prisoner: —
1. That George A. Davidson, not being a constable, and having no legal deputation from any officer to execute any process against the prisoner, had no right to arrest and bind him, and that the prisoner was not bound to submit to his authority.
2. That a person having no public character as an officer, cannot make an arrest without producing an authority by written deputation.
3. That a person unlawfully arrested and bound has the right to *Page 498 
release himself; not to be sure by the use of a murderous weapon, but by necessary force and violence.
4. That this weapon was the common pocket knife of the prisoner; that it was used, not for the purpose of stabbing Davidson in the arm, but of cutting the reins and effecting his own escape; in the midst of alarm and excitement arising from being arrested under a charge, the consequences of which to him, a poor ignorant negro, were unknown; but whose worst fears in regard to it excited by the man who had him unlawfully in custody coolly in his presence inviting persons to go up to New Castle and see him hung.
5. That the law could imply no malice from such circumstances, and there was no pretence of actual malice. The prisoner could have no malice against a stranger, and his, object was only to escape. He cut either by accident, or suffering from the suffocating grasp of Davidson on his throat, and not knowing where he cut. If murder was his object, why did he not strike at the heart or in the in the side? The first blow was a harmless one, on the shoulder blade, doubtless to make Mr. Davidson leap from the carriage; the second was made at the reins, and took effect undesignedly in the arm that was thrust forward to seize him by the throat.
They contended that it was a case of killing in a fight — in blood — without malice: for the purpose of escaping from unlawful restraint; and this was, at most, only manslaughter. They cited 1 Rosc. Ev., 629. to show that where a peace officer attempts arrest a party on insufficient warrant and is resisted and killed is only manslaughter; and 1 Ros. Ev., 698, that even where a third person resisted an officer who, without lawful authority was arresting another and killed him, he was adjudged guilty of only manslaughter.
The Attorney General urged a conviction for murder, even Davidson had no lawful authority to arrest the prisoner — 1. from the use of a deadly weapon; 2. from the deliberation and coolness with which the crime was committed: 3. from the concealment the knife before the use of it; the denial that he had it in his possession. He denied the authority cited from Roscoe's Evidence, its application to the case of a person who voluntarily submits an arrest, and does not controvert the authority, or call for the evidence of it. He contended also, that when a felony has be committed, any one is authorized to arrest the culprit. No any *Page 499 
any one may arrest, upon his own view of the crime done; then the question is whether, after indictment found, or warrant lawfully issued, charging a person with a felony, a private person may of his own motion arrest the person charged. Mr. East seems to think the arrest would be lawful, if made without killing the party. Lord Hale seems to have been of a contrary opinion. (Ros. Ev., 709.) He further contended that, whether Davidson had authority to arrest or not; whether the arrest of the prisoner was lawful or unlawful, the killing was murder, because there was express malice. The killing was unnecessary; the escape might have been made without it; he said so to one of the witnesses, but "he meant to give trouble."
Chief Justice BOOTH charged the jury. — He defined murder and malice; express malice; implied malice; the evidence of express malice; the circumstances under which malice is implied by the law. Malice is implied from any unlawful act; such as in itself denotes a wicked heart fatally bent on mischief. Manslaughter, on the contrary, is a homicide without express malice, and unaccompanied by circumstances from which malice is implied by law. The unlawful use of a deadly weapon is evidence of malice, and in the general, a man is to be taken to have intended the natural and probable consequences of his own act. It would be for the jury, in the first place, to say whether there was evidence of express malice, for which the State had referred to the proof of concealment of the deadly weapon, the sudden use of it, and the admissions of the prisoner to one of the witnesses. The prisoner's counsel, on the contrary, had insisted that there was no evidence of malice against Davidson; that the attempt to escape was lawful; that the means used resulted from the resistance of that attempt; and that the use of this knife being in a frightful struggle, when the prisoner was throttled, and when he was attempting to escape from a person who had no right to take or to detain him; the killing under such circumstances was not malicious, and could amount to no more than manslaughter.
The question of Mr. Davidson's right to arrest this prisoner, was decided by the court. Davidson was not a public officer; he was, acting under a deputation from Constable Wise, who himself never had any power to arrest the prisoner, and of course no power to depute another. A warrant was out for Ward's arrest on a charge of larceny; it was addressed to any constable of New Castle county, but had been delivered to constable Jackson, in whose hands it was *Page 500 
when Wise gave the letter of deputation to Davidson. But in fact, the warrant for Ward's arrest was never in the hands of Constable Wise, and he never had any authority under it. The arrest of the prisoner by Mr. Davidson, who was not a constable, was therefore illegal, and he had the right to escape or resist; but it did not follow that he could therefore kill Mr. Davidson, under any circumstances, without being guilty of murder. The grade of the offence would still depend on the mode of resistance, though the legality of the resistance depends on the lawfulness of the arrest. If a party lawfully arrested resist, the consequences are upon his head; and yet, every kind of resistance would not justify the officer in killing the prisoner; so a person unlawfully arrested has the right to resist, or unlawfully detained has the right to escape; yet this will not justify him in at once killing the person restraining him of his liberty. If, therefore, Ward, being unlawfully restrained by Davidson, deliberately or purposely stabbed him, it would be murder; but if he be in lawful resistance, and in a struggle where the conflict was fierce on both sides, cut even with an instrument such as this, for the purpose of effecting his escape, and the death of the party ensued, it would only be manslaughter. And in a case of reasonable doubt, where, on the whole proof, the case was such as to leave a rational doubt in reference to the prisoner's being guilty of murder, the law benevolently gives to him the benefit of such doubt, and the benefit of the milder construction of his crime.
The jury retired at 5 o'clock, P.M., and in about two hours returned into court with a verdict of guilty of the felony and murder.